EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Municipio Autónomo de Caguas<br><br>Peticionario<br><br>v.<br><br>JRO Construction, Inc., et al.<br><br>Recurridos | Certiorari<br><br>2019 TSPR 10<br><br>201 DPR ____ |

Número del Caso:    CC-2017-576


Fecha: 18 de enero de 2019


Tribunal de Apelaciones:

        Región Judicial de Caguas-Humacao, Panel X


Abogados de la parte peticionaria:

        Lcdo. Eyck O. Lugo Rivera
        Lcda. Vilmarys M. Quiñones Cintrón



Abogados de la parte recurrida:

        JRO Construction
        Lcdo. José M. Acevedo Álvarez

        Enhancers, Inc.
        Lcdo. Iván Díaz López



Materia: Derecho Procesal Civil- Excepciones a la norma de revisión de órdenes o resoluciones dictadas por el Tribunal de Primera Instancia.



Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Municipio Autónomo de Caguas

    Peticionario

       v.

JRO Construction, Inc., *et al.*

    Recurridos

CC-2017-0576     *Certiorari*

Opinión del Tribunal emitida por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico a 18 de enero de 2019.

En el presente caso nos corresponde determinar si el Tribunal de Apelaciones erró al negarse a revisar una *Resolución* emitida por el Tribunal de Primera Instancia en la que el foro primario permitió cierta sustitución de partes en un pleito donde el Municipio de Caguas se oponía a dicho proceder por considerar que esa nueva parte se traía al pleito con el propósito de burlar las disposiciones de la *Ley Especial de Sostenibilidad Fiscal y Operacional del Gobierno del Estado Libre Asociado de Puerto Rico*, Ley Núm. 66-2014, *infra*. Ello, tras el foro apelativo intermedio

razonar que se trataba aquí de un trámite rutinario relacionado con el manejo del caso, no revisable de conformidad con lo dispuesto en la Regla 52.1 de Procedimiento Civil, *infra*.

Tras un examen minucioso de los hechos y las disposiciones legales aplicables, adelantamos que el Tribunal de Apelaciones erró en su apreciación, pues estamos ante un asunto revestido del más alto interés público, y en el cual la negativa del foro apelativo intermedio a intervenir podría resultar en un fracaso irremediable de la justicia; ambos escenarios contemplados en la Regla 52.1 de Procedimiento Civil, *infra,* como instancias donde se le permite a dicho foro ejercer su facultad revisora. Veamos.

I.

En el mes de noviembre de 2010, el Municipio Autónomo de Caguas (en adelante, "Municipio") suscribió un contrato con la compañía JRO Construction, Inc. (en adelante, "JRO") para el diseño y construcción de tres viviendas con aplicaciones de energía renovable. Lo anterior, por la suma de $198,500.

Al año siguiente, el 2 de noviembre de 2011 para ser específicos, el Municipio presentó una demanda sobre incumplimiento de contrato, cobro de dinero y daños y perjuicios en contra de JRO y su fiadora Newport Bonding & Surety Co. En la misma, el Municipio alegó que en el mes de noviembre de 2010 suscribió un contrato para el diseño y

construcción de un proyecto de viviendas de interés social con JRO y que esta compañía, luego de la firma del contrato, mantuvo paralizada la obra hasta que en abril del 2011 decidió unilateralmente dar por terminado el proyecto, ocasionando así que los futuros residentes de las viviendas quedaran desprovistos de un lugar adecuado donde vivir.[1]

Enterado de ello, oportunamente, JRO contestó la demanda y reconvino contra el Municipio. En su reconvención, sostuvo que el Municipio incumplió con sus obligaciones de emitir permisos de construcción; gestionar en la Oficina del Contralor órdenes de cambio indispensables para la continuación de la obra; y pagar a JRO unas sumas correspondientes a ciertas certificaciones. JRO sostuvo que, ante el incumplimiento por parte del Municipio con sus obligaciones contractuales, no estaba obligada a ejecutar las suyas.[2]

Evaluados los planteamientos de las partes, y tras varios incidentes procesales no necesarios aquí pormenorizar, el Tribunal de Primera Instancia dictó una *Sentencia* Parcial, mediante la cual desestimó sumariamente la demanda presentada por el Municipio y declaró con lugar la reconvención de JRO. En consecuencia, ordenó al Municipio a pagar a JRO la suma de $46,635.04.

---

[1] Véase, Apéndice del *Certiorari*, pág. 2.

[2] *Íd.*, pág. 3.

Inconforme con dicho dictamen, el Municipio recurrió ante el Tribunal de Apelaciones. No obstante, el foro apelativo intermedio confirmó la *Sentencia Parcial* del foro primario.

No satisfecho aún, el Municipio presentó un recurso de *certiorari* ante este Tribunal y el mismo fue denegado, por lo que la *Sentencia Parcial* emitida por el foro primario advino final y firme. Así pues, confirmada la determinación inicial del Tribunal de Primera Instancia, sólo quedaba por dilucidar una reclamación de daños próximos hecha por JRO en su reconvención.[3]

Unos meses más tarde, luego de haber advenido final y firme la sentencia antes mencionada, y en lo relacionado a la reclamación por daños próximos, el Municipio presentó ante el foro primario una *Moción urgente solicitando suspensión de vista de daños, notificando acuerdo transaccional y en solicitud de término*.[4] En dicho escrito, se informó al tribunal que las partes habían llegado a un acuerdo transaccional, en virtud del cual el Municipio se comprometía a pagar a favor de JRO la cantidad de $46,635.04 más $9,646.96 en concepto de ganancias dejadas de percibir, lo que sumaba una cantidad total de $56,282.00.

En la referida moción, el Municipio informó al foro primario que las partes no habían finalizado el acuerdo,

---

[3] Véase, Petición de *Certiorari*, pág. 4.

[4] Véase, Apéndice del *Certiorari*, págs. 23-36.

pues JRO no había producido las certificaciones negativas de deudas contributivas, según lo exige el Art. 28 de la *Ley Especial de Sostenibilidad Fiscal y Operacional del Gobierno del Estado Libre Asociado de Puerto Rico*, Ley Núm. 66-2014, *infra*. Según se indicó en el escrito, hasta tanto JRO no produjera las referidas certificaciones negativas de deuda, el Municipio estaba impedido, como cuestión de derecho, de desembolsar los fondos objeto de la *Sentencia Parcial* y del acuerdo transaccional.[5] Además, en la referida comparecencia se indicó que, en aras de dar cumplimiento a lo ordenado por el tribunal, las partes habían intercambiado varios borradores de estipulación. No obstante, JRO se había rehusado a suscribir cualquier estipulación que hiciera referencia a los requisitos de la Ley Núm. 66-2014, *infra*.[6]

Así las cosas, unos días más tarde, JRO y Enhancers, Inc. (en adelante, "Enhancers") presentaron ante el Tribunal de Primera Instancia una *Moción conjunta sobre sustitución de partes*. En dicha moción, informaron que habían suscrito un contrato mediante el cual JRO le cedió a Enhancers los créditos correspondientes al presente caso.[7] Esta última, a su vez, presentó una moción en la cual notificó su aceptación del acuerdo transaccional y se

---

[5] *Íd.*, pág. 24.

[6] *Íd.*

[7] El Municipio señala en su petición de *certiorari* que, tras una búsqueda en los récords electrónicos del Departamento de Estado, descubrió que la Sra. Yecenia Oliveras Tejeiro, presidenta de JRO, también era la presidenta, tesorera y agente residente de Enhancers. Véase, Apéndice del *Certiorari*, págs. 41 y 57.

comprometió a suscribir el mismo, una vez el tribunal aprobara la sustitución de parte.

Por su parte, el Municipio presentó una *Oposición urgente a moción conjunta sobre sustitución de parte*, en la que planteó que la cesión del crédito litigioso no se había hecho de buena fe. **Según argumentó el Municipio, la transferencia de créditos en cuestión se había hecho con el propósito de burlar las disposiciones de la Ley Núm. 66-2014, *infra*, relacionadas a las certificaciones negativas de deudas contributivas.** En la alternativa, el Municipio solicitó el precio pagado por Enhancers para ejercer su derecho de retracto de crédito litigioso de forma oportuna. JRO presentó su correspondiente contestación a la oposición del Municipio.

Celebrada la vista de rigor, el Tribunal de Primera Instancia emitió una *Resolución* autorizando la sustitución de parte. Oportunamente, el Municipio presentó una moción de reconsideración. No obstante, la misma fue denegada.

Insatisfecho con la determinación del foro primario, el Municipio presentó un recurso de *certiorari* ante el Tribunal de Apelaciones. Sin embargo, dicho foro denegó expedir el auto solicitado, por entender que la determinación de autorizar la sustitución de parte se trataba de un trámite rutinario relacionado al manejo del caso, no revisable de conformidad con lo dispuesto en la Regla 52.1 de Procedimiento Civil, *infra*. En respuesta, el

Municipio presentó oportunamente una solicitud de reconsideración, pero ésta fue declarada no ha lugar.

No conforme con el dictamen del foro apelativo intermedio, el Municipio recurre ante este Tribunal mediante recurso de *certiorari*. En su petición, el Municipio señala que el Tribunal de Apelaciones erró al no expedir el auto solicitado y rehusarse a atender los méritos de la controversia planteada, toda vez que la misma está revestida de un alto interés público.

Trabada así la controversia, y con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

II.

A.

Como es sabido, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, es la disposición reglamentaria que regula todo lo relacionado a la revisión de sentencias y resoluciones dictadas por el Tribunal de Primera Instancia. Al respecto, la mencionada regla procesal establece que:

> Todo procedimiento de apelación, *certiorari*, certificación, y cualquier otro procedimiento para revisar sentencias y resoluciones se tramitará de acuerdo con la ley aplicable, estas reglas y las reglas que adopte el Tribunal Supremo de Puerto Rico.
>
> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto

anteriormente, **el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia** cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, **en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.** Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 de este apéndice sobre los errores no perjudiciales. (Énfasis suplido y bastardillas en el original) 32 LPRA Ap. V, R. 52.1.

Por su importancia para la correcta disposición de la controversia ante nuestra consideración, conviene recordar aquí que, al momento de su aprobación en el año 2009, la mencionada Regla 52.1, *supra*, fijaba taxativamente una serie de asuntos interlocutorios que serían revisables por el foro apelativo intermedio mediante recurso de *certiorari*. En aquel entonces, dicha revisión interlocutoria se limitaba a aquellas instancias donde se recurriera de una resolución u orden bajo las Reglas 56 (Remedios provisionales) y 57 (*Injunctions*) de Procedimiento Civil o de la denegatoria de una moción de carácter dispositivo. Véanse, R. Hernández Colón, *Práctica Jurídica de Puerto Rico, Derecho Procesal Civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, pág. 532; J. Cuevas Segarra,

*Tratado de Derecho Procesal Civil*, 2da ed., Ed. Publicaciones JTS, 2011, T. IV, pág. 1477.

Ahora bien, en aras de atender asuntos de particular importancia no considerados hasta entonces por la referida Regla 52.1, *supra*, la mencionada disposición legal fue posteriormente enmendada por la Ley Núm. 220-2009 y la Ley Núm. 177-2010. *IG Builders v. BBVAPR*, 185 DPR 307 (2012). Véanse, *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723 (2016); *Job Connection Center v. Sups. Econo*, 185 DPR 585 (2012). Véase, además, Cuevas Segarra, *op. cit.*, págs. 1495-1496. Es así como se incorporaron en el texto de la Regla en cuestión otros escenarios en los cuales el foro apelativo intermedio podría revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia que, hasta ese momento, no podía revisar. Estos escenarios fueron: "la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, **en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia**". (Énfasis suplido) 32 LPRA Ap. V, R. 52.1.

En lo pertinente al caso que nos ocupa, la enmienda que permitió que el Tribunal de Apelaciones pudiera atender determinaciones interlocutorias en casos revestidos de interés público o en casos donde esperar a la apelación

implicase un fracaso irremediable de la justicia fue introducida específicamente por la Ley Núm. 177-2010. Cuevas Segarra, *op. cit.*, pág. 1501. Véase, además, *Job Connection Center v. Sups. Econo*, *supra*. En la Exposición de Motivos de la referida ley, se expresó que el listado estricto de circunstancias que establecía la Regla 52.1 en su versión original "no vislumbra[ba] situaciones excepcionales que [requerían] la intervención interlocutoria del Tribunal de Apelaciones para corregir errores del Tribunal de Primera Instancia". Exposición de Motivos de la Ley Núm. 177-2010.

**La inclusión de estas enmiendas implicó, pues, el reconocimiento por parte de la Asamblea Legislativa de "que ciertas determinaciones interlocutorias pueden afectar sustancialmente el resultado del pleito o tener efectos limitativos para la defensa o reclamación de una parte o conllevar cuestiones neurálgicas o de política pública que deben estar sujetos a revisión inmediata".** Hernández Colón, *op. cit.*, pág. 533. En fin, determinaciones interlocutorias que no pueden esperar a que el pleito finalice para éstas ser revisadas.

B.

Establecido lo anterior, es preciso recordar que, si bien el auto de *certiorari* -- el cual se utiliza para la revisión de resoluciones como la que está aquí en controversia -- es un vehículo procesal discrecional, la

discreción del tribunal revisor no debe hacer abstracción del resto del derecho. *IG Builders v. BBVAPR*, *supra*; *Pueblo v. Rivera Santiago*, 176 DPR 559 (2009); *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83 (2008); *García v. Padró*, 165 DPR 324 (2005). Ello, pues, como ha expresado este Tribunal en ocasiones anteriores, la "[d]iscreción es […] una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera […]". *Pueblo v. Sánchez González*, 90 DPR 197, 200 (1964). Véanse también, *IG Builders v. BBVAPR*, *supra*; *Pueblo v. Rivera Santiago*, *supra*; *Torres Martínez v. Torres Ghigliotty*, *supra*; *García v. Padró*, *supra*.

La discreción judicial "no se da en un vacío ni en ausencia de unos parámetros". *IG Builders v. BBVAPR*, *supra*, pág. 338; *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580 (2011). Recordemos que, a fin de que el Tribunal de Apelaciones pueda ejercer su discreción de manera prudente, la Regla 40 de su Reglamento, 4 LPRA Ap. XXIII-B, R. 40, establece los criterios que dicho foro debe considerar al determinar si procede o no expedir un auto de *certiorari*. Los criterios esbozados en la referida Regla son los siguientes:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Dicho ello, y contando con los anteriores criterios como guía en los trabajos que realiza, nos reiteramos, pues, en que "[c]uando [el Tribunal de Apelaciones] determina, bajo su facultad discrecional, no entender en los méritos de los asuntos que le son planteados, debe ser sumamente cuidadoso", *Negrón v. Srio. de Justicia*, 154 DPR 79, 93 (2001), y consciente de la naturaleza de las controversias que tiene ante su consideración.

III.

En esa dirección, precisa señalar que la *Ley Especial de Sostenibilidad Fiscal y Operacional del Gobierno del Estado Libre Asociado de Puerto Rico*, Ley Núm. 66-2014, 3 LPRA sec. 9101 *et seq.*, (en adelante "Ley Núm. 66-2014") fue aprobada por nuestra Asamblea Legislativa con el propósito de permitirle al Estado Libre Asociado de Puerto

Rico contar con liquidez suficiente para pagar su nómina y sufragar servicios esenciales, mediante la implementación de medidas de reducción de gastos y estabilización fiscal. Véase, Exposición de Motivos de la Ley Núm. 66-2014, *supra*. En dicha ley, se declaró un estado de emergencia y se adoptó un plan para manejar la amortización de la deuda y el cumplimiento con los compromisos económicos del País que, a su vez, garantizara la continuidad de la gestión pública en la prestación de servicios esenciales a la ciudadanía. Art. 2, Ley Núm. 66-2014, 3 LPRA sec. 9101.

Como parte de sus medidas de estabilización fiscal, la Ley Núm. 66-2014, *supra*, estableció como política pública evitar el pago de sumas globales que puedan impactar negativamente la estabilidad fiscal y operacional del Estado, incluyendo los gobiernos municipales. Véase, Carta Circular Núm. 2015-02 del Secretario de Justicia, pág. 2. Con ello en mente, en el Art. 28 de la referida ley se dispuso una serie de requisitos que se debían cumplir en todo caso en el que, mediante sentencia final y firme, una agencia, instrumentalidad, corporación pública, municipio o el Estado Libre Asociado de Puerto Rico estuviese obligado a realizar un desembolso de fondos con cargo al fondo general del gobierno, el fondo de la corporación pública que se trate, o al presupuesto municipal.

En lo pertinente al caso que nos ocupa, el inciso (i) del referido artículo lee como sigue:

**El Estado, la corporación pública o el municipio no realizará pago alguno a menos que el acreedor de la sentencia provea una certificación oficial emitida por la entidad pertinente, que indique la ausencia de deuda con el Departamento de Hacienda, el Centro de Recaudaciones de Ingresos Municipales y la Administración para el Sustento de Menores.** En el caso de que el acreedor de la sentencia tenga deuda con alguna agencia, entidad o corporación pública del Estado o con el propio municipio, la cantidad de la misma se reducirá del total a pagar. En caso de que el acreedor de la sentencia haya solicitado alguna revisión administrativa de la deuda, el Gobierno del Estado Libre Asociado, la corporación pública o el municipio, según sea el caso, se abstendrá de emitir pago alguno hasta que el proceso de revisión haya culminado. De confirmarse la existencia de la deuda impugnada, la cantidad de la misma se reducirá del total a pagar. (Énfasis suplido) 3 LPRA sec. 9141.

Como se puede apreciar, y según se desprende de la precitada disposición, existe una clara prohibición a todas las agencias e instrumentalidades del Estado, las corporaciones públicas y los municipios de realizar cualquier tipo de desembolso monetario a favor de un acreedor que falle en demostrar que no tiene deudas con las entidades gubernamentales allí enumeradas. Ello es así pues, de otro modo, el Estado, las corporaciones públicas, o los municipios, continuarían emitiendo pagos sin asegurarse de cobrar de forma efectiva sus propias acreencias, ello en detrimento de su estabilidad fiscal y operacional.

Es, precisamente, a la luz de la normativa antes expuesta, que procedemos a disponer del caso que nos ocupa.

IV.

Como mencionamos anteriormente, en el caso ante nuestra consideración el Municipio sostiene que el Tribunal de Primera Instancia erró al permitir la sustitución de parte solicitada por JRO, la que a su juicio se hace para burlar lo dispuesto en el Art. 28 de la Ley Núm. 66-2014, *supra*, relacionado a las certificaciones negativas de deudas contributivas. Asimismo, señala que el Tribunal de Apelaciones también erró al no expedir el recurso de *certiorari* solicitado y rehusarse a atender los méritos de la controversia. Tiene razón el Municipio. Nos explicamos.

Según se puede colegir de la discusión previa, la Ley Núm. 66-2014, *supra*, de forma diáfana dispone que el pago de sentencias por parte del Estado, las corporaciones públicas y los municipios, está sujeto a que el acreedor provea las correspondientes certificaciones negativas de deuda con el Departamento de Hacienda, el Centro de Recaudaciones de Ingresos Municipales (CRIM) y la Administración para el Sustento de Menores (ASUME). Ello, para asegurar que el Estado no haga desembolsos monetarios sin cobrar sus propias acreencias, evitando así el pago de sumas globales que afecten la estabilidad fiscal y operacional del gobierno.

En el presente caso, conforme a lo dispuesto por la Ley Núm. 66-2014, *supra*, el Municipio le requirió a JRO que produjera las correspondientes certificaciones negativas de

deuda contributiva. No obstante, dicha parte no ha cumplido con tales requerimientos, por lo que el Municipio está impedido de hacer a su favor el desembolso objeto de la *Sentencia Parcial* y el acuerdo transaccional pactado. Consecuentemente, la cesión de crédito efectuada entre JRO y Enhancers, y la posterior sustitución de partes autorizada por el Tribunal de Primera Instancia, podría ser, como alega el Municipio, un subterfugio para evadir el cumplimiento con los requisitos impuestos por ley, que merece ser objeto de revisión judicial. Ello es así, pues, sin duda alguna, en el caso de epígrafe se configuran al menos dos (2) de las excepciones a la norma de revisión de órdenes o resoluciones interlocutorias.

En primer lugar, en la medida en que se trata de un desembolso de fondos del erario, no cabe duda de que **la controversia planteada está revestida del más alto interés público**. Ello se hace aun más evidente al considerar la difícil situación fiscal que enfrenta el País y que, precisamente, intenta atajar el estatuto en cuestión.

En segundo lugar, en vista de que existe una alegación sobre la posibilidad de que el mecanismo procesal de sustitución de partes se esté utilizando para burlar obligaciones establecidas por ley -- lo que traería consigo un uso incorrecto de fondos públicos -- **se hace necesaria la intervención del foro apelativo intermedio de forma inmediata, pues lo contrario podría resultar en un fracaso**

**irremediable de la justicia.** Erró el Tribunal de Apelaciones al así no hacerlo.

Procedía, pues, la expedición del auto de *certiorari* solicitado por el Municipio al foro apelativo intermedio. Se cometió, por tanto, el error señalado.

V.

Por los fundamentos antes expuestos, revocamos la *Resolución* emitida por el Tribunal de Apelaciones y devolvemos el caso a dicho foro para que proceda de conformidad con lo aquí dispuesto. Se instruye al foro apelativo intermedio a que, para la correcta disposición del presente caso, solicite a la brevedad posible al Tribunal de Primera Instancia los autos originales del mismo.

Se dictará sentencia de conformidad.


Ángel Colón Pérez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Municipio Autónomo de Caguas

    Peticionario

       v.

JRO Construction, Inc., *et al.*

    Recurridos

CC-2017-0576      *Certiorari*

SENTENCIA

En San Juan, Puerto Rico a 18 de enero de 2019.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, revocamos la *Resolución* emitida por el Tribunal de Apelaciones y devolvemos el caso a dicho foro para que proceda de conformidad con lo aquí dispuesto. Se instruye al foro apelativo intermedio a que, para la correcta disposición del presente caso, solicite a la brevedad posible al Tribunal de Primera Instancia los autos originales del mismo.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo